DOMENGEAUX, Judge.
The Louisiana Department of Highways expropriated the property of defendant, Guy O. Dyess, for the purpose of building an interstate bypass in Lake Charles, Louisiana. This was accomplished in 1969 through the procedures provided in La.R.S. 48:441 et seq., the “quick taking” statute. The Department, in accordance with that law, deposited $26,169.00 in the registry of the court as just compensation.
Defendant answered the suit, and reconvened, praying for $75,000.00 for the land and improvements, and $50,000.00 for severance damages. His reconventional demand was dismissed without prejudice on September 2, 1976, for failure to prosecute his claim for over five years. Defendant then filed another answer on November 8, 1976, *1305 making the same demands as in his first answer.[1]
Trial was held in December of 1976, and the trial judge rejected defendant’s recon-ventional demands. Defendant has taken this appeal. We affirm.
The subject property consists of two lots, one of which fronts on West Prien Lake Road and the other on Ernest Street. The lots connect in the rear to form an L-shaped configuration. Lot 12, the West Prien Lake Road property, measured 86.4 feet in front and 315.8 feet in depth. Lot 4, the Ernest Street property, measured 79 feet in front and in depth 172.7 feet. The square footage of both lots combined was 40,926.4 feet. The improvements on the property consisted of two brick veneer dwellings, a frame house and a storage shed on Lot 12, and a frame dwelling and carport on Lot 4. The property was zoned commercial but was being used for residential purposes at the time of the taking.
The extreme southern part of Mr. Dyess’ property, containing 19,885 square feet, was taken, leaving the northern portion of his lot on West Prien Lake Road, with a depth of 236.8 feet and 250.3 feet on its east and west sides, respectively. Included in this taking was the house and carport on Ernest Street and the frame house, storage shed and a portion of the small brick veneer dwelling on Prien Lake Road.
The Department’s two expert appraisers were Normand Terry and Stanley Tiger. Both of them appraised the property at the time of the taking, and said that the highest and best use of the property was residential in transition to commercial property. Terry, using the comparable sales approach, valued the property at $10,865.00 for the land alone, and for the improvements, $12,500.00. Tiger estimated the value of the property to be $12,130.00 for the land alone, and $14,019.00 for the improvements.
Defendant Dyess did not have the property appraised until 1976. At that time he employed as experts, Kermit Williams and Curtis Book who both appraised the property as of 1969, the time of the taking. However, neither of these men had an opportunity to view the property as it was in 1969. Consequently, the value of the improvements as was estimated by the Department’s appraisers was accepted by Williams and Book. The estimate of the value of the land itself made by the defendant’s appraisers did not agree with either of plaintiffs estimates. Book and Williams found the highest and best use of the property to be commercial, and valued it as such. Williams’ estimate of the value of the land alone was $1.23 per square foot and Book’s estimate was $1.30 per square foot, for total values of $24,458.50 and $25,980.00 respectively. As can be seen by comparison, these values greatly exceed those placed on the property by plaintiff’s appraisers. The defendant’s appraisers also used comparable sales approach to make their valuations.
One of the main reasons given at trial for the higher, commercial valuation reached by Book and Williams was the development of Prien Lake Mall on West Prien Lake Road, across from the subject property. Williams testified that the proposed building of the mall was a certainty at the time of the taking. Terry, on the other hand, stated that the mall proposal was only a rumor at that time and did not become a reality until some time subsequent to the expropriation.
The trial judge found the three issues for his determination to be: (1) the value of the land taken; (2) the value of the improvements taken; and (3) the amount of severance damages incurred, if any.
The correct measure of compensation in this type of expropriation case is the market value of the thing taken, which is the price which would be agreed upon by a willing and informed buyer and seller in the condition in which the property stood at the time of the expropriation. State, Dept. of *1306 Highways v. Wolfe, 252 So.2d 483 (La.App. 3rd Cir. 1971).
The market value of condemned property means the worth of the land considered in regard to its best and highest use, which is the manner in which the property can be reasonably used in the not too distant future. State, Department of Highways v. Jenkins, 207 So.2d 380 (La.App. 3rd Cir. 1968).
The burden of proving alleged severance damages to the remainder of property involved in an expropriation proceeding rests upon the owner who must establish such damages with legal certainty by a preponderance of the evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961).
The parties stipulated at trial to the value of the improvements. The judge accepted the valuation of the land made by the State’s appraisers to be correct. He made no severance damage award. We quote his written reasons in part:
“ . . . Although some of the lots on West Prien Lake Road had been zoned commercial, only a small number thereof close to Ryan Street and some distance East of defendant’s property were then being used for commercial purposes. Ryan Street and East Prien Lake Road had a great many commercial establishments situated thereon at the time. Practically all of the improvements on West Prien Lake Road were being occupied as residences, but there was talk of the construction of a large shopping center opposite the defendant’s property. Also, the sales in this area indicated that the purchasers were acquiring such property for speculative commercial purposes. There was no definite evidence that the large shopping center project had reached the point where its construction was a certainty.
When the case was tried on December 14, 1976, the rear portion of the subject lot was being rented by the owner for residential purposes.
Both Messrs. Terry and Tiger found that there was no decrease in the value of the land remaining after the taking, and therefore concluded that no severance damages had resulted thereto.
On November 5, 1971, Mr. Dyess sold his entire remainder, with improvements, to Ball’s Fried Chicken, Inc., for $45,-000.00. This amounted to $2.14 per square foot, or $5.25 per front foot. Unquestionably, there was an increase of the value of all property in this area from 1969 to 1971, because of the commercial development and inflation. However, there is nothing in the record to indicate just what increase resulted from these factors. Certainly, the sale of the subject property on November 5, 1971,'does not reflect that its loss of an exit on Ernest Street or proximity to the interstate highway by-pass lessened its desirability or market value.
Each one of the experts who testified in this case expressed what he considered were valid reasons for his consideration and adjustments of comparable sales and the basis for his final conclusions. However, most of these were simply personal judgment factors. This court certainly cannot say that the defendant’s experts’ conclusions were better grounded on fact and reason than those of the plaintiff’s experts. On the contrary, it is more inclined to agree with the latter. Since the defendant bears the burden of proof in order to recover additional compensation in this expropriation case, the court must necessarily conclude that it has failed in this respect.
We cannot say that the trial judge erred in his judgment. He has much discretion in evaluating and weighing evidence given by expert witnesses. He was in a much better position than we are in to evaluate testimony, given his familiarity with the growth and development of Lake Charles at that time. As he correctly pointed out, the burden of proof for additional *1307 damages and severance damages lays with the defendant. After a careful review of the record, we see no evidence that would compel a reversal.
For the above and foregoing reasons the judgment of the district court is affirmed. Costs are to be assessed against defendant-appellant.

AFFIRMED.

. The trial judge’s action in ordering defendant’s reconventional demand dismissed without prejudice and the defendant’s filing another answer, is based on the case of State, Department of Highways v. Ott, 262 So.2d 397 (La.App. 1st Cir. 1972), writ refused June 29, 1972.