MOORE, J.
| rBank of Néw York Mellon appeals a judgment that found that it abandoned its executory process’ suit against the named heirs of William D. Rowe, and dismissed the suit with prejudice. We affirm the dismissal, but amend it to be without prejudice.
FACTUAL AND PROCEDURAL HISTORY
In 2003, Iree Rowe and her husband,. William D. Rowe, took out a home equity line of credit with MBNA America, with a limit of $51,300. They executed a multiple indebtedness mortgage affecting their home, described as Lot 2, Boucher Subdivision, Cullen, La.[1] The mortgage included a confession of judgment, acceleration clause and other provisions associated with executory process. Within a month, MBNÁ indorsed the mortgage package to Countrywide Home Loans,
William Rowe died in December 2004, and Iree died in January 2005. The mortgage fell into arrears.
On February 8, 2008, Countrywide filed this petition for executory process against “the Estate of Iree Sterling Mims Rowe, aka Iree S. Rowe,” alleging that Iree had died and no succession had been opened.[2] It recited the essentials for executory process and prayed for seizure and sale of Lot 2, Boucher Subdivision. The writ issued and the sheriff filed notice on February 27.
On June 25, 2008, a curator filed an answer on behalf of Iree’s heirs. He recited that he was trying to contact them, and generally denied all of Countrywide’s allegations.
On January 15, 2010, someone identified only as Kathryn-Talbot filed a “notarial act of correction” in-the Webster Parish mortgage records. This recited that the original-mortgage documents actually intended- to encumber Lot 2, less and except the north 10 feet thereof, Boucher Subdivision. This document was filed only in the mortgage records, notan the suit record.
On May 4, 2011, someone identified only as “from the foreclosure department” faxed a letter to the sheriffs office, asking to stop the scheduled foreclosure “so that we may amend the petition to reflect the *1155 correct legal description of the. property.” The procés-verbal, issued the same day, described Lot 1 and the north 10 feet of Lot 2, Boucher Subdivision, with an assessed value of only $1,500. However, no sale took place.
On December 5, 2012, Countrywide filed a supplemental and amended petition for executory process. This cited the notarial act of correction, filed January 15, 2010, and requested seizure and sale of Lot 1 and the north 10 feet of Lot 2, Boucher Subdivision. An ad hoc judge signed the order of seizure and sale the same day.
On January 29, 2013, Lula B. Cornelius, the administratrix of Iree’s succession, filed a petition to arrest the seizure and sale. She showed that the original, mortgage referred to Lot 2, but that Countrywide was now trying to seize more property, Lot 1 and the north 10 feet of Lot 2\ that the person who filed the notarial act of correction, Ms. Talbot, had no apparent connection to the original mortgage; and that the correction was much more than the | a“clerical error” allowed by statute, R.S. 35:2.1. A rule was set for March 3, but no one appeared for it.
On August 13, 2013, Countrywide filed a motion to substitute Bank of New York Mellon (“BNY”) as plaintiff, as BNY had acquired the mortgage note. On September 16, BNY filed a motion to convert the matter to an ordinary proceeding.
In a second supplemental and amending petition, BNY admitted its “inadvertence and error” , in the original property description, alleging that the debtors had really intended to encumber Lots 1 and 2, Boucher Subdivision, and named as defendants Loretha R. Pointer and other heirs of William Rowe (“the William Rowe heirs”).
The William Rowe heirs promptly filed a motion to dismiss for abandonment, La. C, C. P. art. 561, They alleged that no step in the prosecution or defense had occurred for over three years, from June 25, 2008, when Iree’s curator filed an answer, until August 15, 2012, when Countrywide filed a motion to substitute counsel.[3] The district court signed, that very day, an ex parte order dismissing BNY’s claims against the William Rowe heirs, with prejudice.
BNY filed a “motion for amendment of judgment and motion to set aside dismissal.” It conceded that the property description had expanded from Lot 2 (in the act of mortgage and original petition) to Lot 1 and the north 10 feet of Lot 2 (in the notarial act of correction and first supplemental and amended petition) to Lots 1 and 2 (in the second supplemental and Lamended petition). However, it argued that code articles about abandonment do not apply to executory process, citing Greater New Orleans Homestead Ass’n v. Bell, 219 La. 41, 52 So.2d 241 (1951); that the notarial act of correction was a step in the prosecution; and that Art. 661 ’must always' be construed in favor of maintaining the suit. Alternatively, it argued that any dismissal for abandonment should be presumptively without prejudice.
The William Rowe heirs opposed the motion, arguing that dismissal with prejudice, though rare, is within the court’s discretion; that Bell relied on an article in the former Code of Practice, which had been repealed, and the current law, La. C. C. P. art. 561, makes no exception for executory proceedings; that BNY converted the matter to ordinary process, and could not argue any benefit of executory process; and that the notarial act of correction exceeded the statutory authority to *1156 correct a “clerical error” and was without legal effect.
After a hearing limited to argument, a different judge of the 26th JDC rendered an opinion denying the motion to amend or set aside the judgment.[4]
BNY took this devolutive appeal, raising four assignments of error.
DISCUSSION

Application of Abandonment to Executory Process

By its first assignment of error, BNY urges that Art. 561 does not apply to this, an executory proceeding. It argues that in executory process, once the trial court has issued a writ of seizure, the court process is complete and there is nothing left to abandon. In support, it cites, generally, La. C. C. | fiP. arts. 2631-2644, and specifically, the official revision comment to Art. 2638, and urges the rule is confirmed in Greater New Orleans Homestead, supra. It contends that a writ of seizure pursuant to a confession of judgment in a mortgage is a final judgment, which cannot be abandoned. BNY concedes that it converted the matter to an ordinary proceeding, but argues that this was after the alleged abandonment occurred, so the current status of the case is irrelevant.
Abandonment is regulated by La. C. C. P. art. 561, which provides, in pertinent part:
Art. 561. Abandonment in trial and appellate court
A. (1) An action * * * is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding[.] * * *
(3) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. * * *
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
A “step” in the prosecution or defense of an action is any formal action intended to hasten the matter to judgment. James v. Formosa Plastics Corp. of La., 2001-2056 (La. 4/3/02), 813 So.2d 335; Stephens v. Stephens, 48,957 (La. App. 2 Cir. 4/9/14), 137 So.3d 1242. Abandonment of an action is not a punitive concept, but a balancing concept. It balances two equally sound, competing policy considerations: the desire to see every litigant have his day in court, and not lose this by some technical carelessness or | (¡unavoidable delay; and the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription. Clark v. State Farm Mut. Auto. Ins. Co., 2000-3010 (La. 5/15/01), 785 So.2d 779; Hibernia Nat’l Bank v. Aero-Mech Inc., 50,-608 (La. App. 2 Cir. 8/3/16), 215 So.3d 350. Art. 561 is to be liberally construed in favor of maintaining a plaintiffs suit. Louisiana Dept. of Transp. & Dev. v. Oilfield Heavy Haulers, LLC, 2011-0912 (La. 12/6/11), 79 So.3d 978; Hibernia Nat’l Bank v. Aero-Mech, supra.
*1157 By its plain terms, Art. 561 applies to any action except certain succession proceedings. It contains no exception for executory proceedings. Abandonment plainly applies to executory proceedings. Nationstar Mortg., LLC v. Harris, 2013-1335 (La. App. 4 Cir. 5/14/14), 141 So.3d 829. ENT’s contention to the contrary lacks merit.
BNY’s more subtle argument is that once the trial court issues a writ of seizure, the court process is complete; there is nothing left to abandon. In support, it cites the official revision comment to La. C. C. P. art. 2638:
In the absence of any injunction to arrest the seizure and sale, the order rendered by the court directing the seizure and sale of the property is the only action taken by the court in an executo-ry proceeding. It is the closest analogy to a judgment which can be found in executory procedure; and this is the order from which an appeal must be taken. Cf. State ex rel. Feibleman v. Judge of Nineteenth Judicial District Court, 45 La. Ann. 1426, 14 So. 428 (1893).
BNY argues that the court recognized the unique quality of executory proceedings in Greater New Orleans Homestead, supra, holding that a decree for executory process is merely an ex parte order in rem, and not subject to the rules of abandonment. It' is a final judgment and as such, BNY contends, cannot be abandoned. Wilson v. King, 233 La. 382, 96 So.2d 641 (1957); Rodgers v. Rodgers, 34,188 (La. App. 2 Cir. 9/27/00), 768 So.2d 695, writ denied, 2000-2857 (La. 12/8/00), 776 So.2d 467.
The text of Art. 2638 does not convey the fine distinction sought to be gleaned from the comment. The article itself provides:
Art. 2638. Order for issuance of writ of seizure and sale
If the plaintiff is entitled thereto, the court shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property affected by the mortgage or privilege, as prayed for and according to law.
Nothing in Art. 2638 says executo-ry proceedings are exempt from the rules of abandonment. In fact, the court in Nationstar Mortg. v. Harris, supra, expressly rejected the alleged equivalence of a writ of seizure and sale to a final judgment as “only analogous.” The court found that the “true judgment” is actually the confession of judgment, not the order of seizure and sale, and that as a practical matter the executory proceeding is not complete until there is a sale. This reasoning is sound, and we confirm it as our own.[5]
Moreover, in the instant case, it is abundantly clear that even though Countrywide obtained a writ of seizure and sale in February 2008, it did not consider this a final judgment. Instead of merely proceeding to enforce its “final judgment,” it filed a supplemental and amended petition for execu-tory process in December 2012; its successor, BNY, converted the matter to an ordinary proceeding and, in August 2013, filed a second supplemental and | amending petition. Such filings would be *1158 redundant if the plaintiff thought it already had a “final judgment.” Simply put, Countrywide’s and BNY’s own conduct prove that this writ of seizure and sale was nowhere near a final judgment. BNY is still trying to establish precisely which parcel of land it may seize.
In light of these facts, the district court committed no legal or manifest error in applying Art. 561 to this case, an executo-ry proceeding. BNY’s first assignment of error lacks merit.

Notarial Act of Correction as Step in the Prosecution

By its second assignment of error, BNY urges that even if abandonment applied, the appellant’s actions in correcting the mortgage were sufficient to prevent abandonment. BNY reiterates the jurisprudential presumption against abandonment and the “unique nature” of executory process; It argues that “steps” need not be taken on the record, as in an ordinary action, but can consist of any “actions by a creditor that are necessary to proceed” with the action, citing Nationstar Mortg. v. Harris, supra. It submits that the notarial act of correction constituted a step in the prosecution, even though it was not on the record and was without notice to other parties.
The validity of an affidavit of corrections is regulated by La. R.S. 35:2.1, which provides (with emphasis added):
§ 2.1. Affidavit of corrections
A.(1) A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by any of the following:
(a) The person who was the notary or one of the notaries before whom the act was passed.
1 n(b) The notary who actually prepared the act containing the error.
(c) In the event the person defined in Subparagraphs (a) or (b) of this Paragraph is deceased, incapacitated, or whose whereabouts are unknown, then by a Louisiana notary who has possession of the records of that person, which records contain information to support the correction.
(2) The act of correction shall be executed before two witnesses and a notary public.
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.
D. This Section shall be in addition to other laws governing executory process.
Notably, an affidavit of corrections is permissible only to correct a “clerical error” which does “not alter the true agreement and intent of the parties.” It cannot effect any substantive change to the original document. Cockerham v. Cockerham, 2012-1769 (La. App. 1 Cir. 10/3/13), 201 So.3d 253; Vickers v. Vickers, 2009-280 (La. App. 3 Cir. 11/18/09), 25 So.3d 210; City of Harahan v. State, 08-106 (La. App. 5 Cir. 5/27/08), 986 So.2d 755; First Nat’l Bank, USA v. DDS Const., LLC., 2011-1418 (La. 1/24/12), 91 So.3d 944, fn. 15 (collecting cases).
A cursory inspection of the notarial act of correction shows noncompliance with R.S. 35:2.1 A(1). Kathryn Talbot, who exe *1159 cuted the correction, was not the notary-before whom the original act was passed, and she did not assert that she prepared the original, erroneous act.
| inMore importantly, the “correction” was in fact a significantly different property description. This is the kind of substantive change that the courts rejected in Cockerham, Vickers and City of Harahan, supra. The district court committed no legal or factual error in finding the notarial act of correction to be without effect.
We are fully cognizant of and reaffirm the presumption against abandonment. However, courts have found that invalid discovery requests do not count as steps in the prosecution. Williamson v. Berger, 2005-83 (La. App. 3 Cir. 6/8/05), 908 So.2d 35, writ not cons., 2006-0657 (La. 5/26/06), 930 So.2d 5; Benjamin-Jenkins v. Lawson, 2000-0958 (La. App. 4 Cir. 3/7/01), 781 So.2d 893, writ denied, 2001-1546 (La. 9/14/01), 796 So.2d 681. The instant notarial act of correction, with its technical and substantive deficiencies, is equally invalid.
BNY strongly argues that despite these deficiencies, its notarial act of correction was equivalent to the “title clearing actions” that were found to defeat abandonment in Nationstar Mortg. LLC v. Harris, supra. There, the lender obtained a certificate of cancellation of a superior lien on the property and filed this in the mortgage records of Orleans Parish. Notably, there was no allegation that the certificate of cancellation—issued by .the Orleans Parish Clerk of Court—was invalid or defective in any way. The same simply cannot be said for the notarial act of correction relied on by BNY in the instant case. . ,
The district court committed no legal or factual error in finding this notarial act of correction did not constitute a step in the prosecution. This assignment of error lacks merit.

Phraseology of Judgment

|nBy its third assignment of error, BNY Urges the district court should have dismissed only the claims asserted against the William Rowe heirs. It argues that the judgment left “some ambiguity” in that the Estate of Iree never moved for dismissal, and the curator’s answer to the first supplemental petition constituted a waiver of abandonment, under Clark v. State Farm, supra.
The ex parte order, signed February 29, 2016, dismissed the plaintiffs’ claims “against Defendants, the heirs of William D. Rowe, Loretha Diana Rowe Pointer, Anthony Davis Rowe, -Ruby Renese Rowe, and Tedrick Maurice Rowe[.]” There is no mention of the Estate of Iree Rowe. Under the rule of ejusdem generis, the order applies only to the enumerated defendants. See, e.g., Pumphrey v. City of New Orleans, 2005-0979 (La. 4/4/06), 925 So.2d 1202. We perceive no ambiguity and no need to amend the judgment. This assignment of error lacks merit.

Dismissal With or Without Prejudice

By its final assignment of error, BNY urges the .court erred in dismissing the claims with prejudice, as dismissals for abandonment can only be without prejudice. Reed v. Peoples State Bank of Many, 36,531 (La. App. 2 Cir. 3/5/03), 839 So.2d 955; Morgan v. Hopkins, 36,506 (La. App. 2 Cir. 10/23/02), 830 So.2d 459, writ denied, 2002-2866 (La. 1/31/03), 836 So.2d 71. It contends that when a suit is dismissed under Art. 561, none of the issues in controversy are, decided, res judicata would not attach, and hence, dismissal cannot be with prejudice. Total Sulfide Servs., Inc. v. Secorp Indus., 96-589 (La. App. 3 Cir. 12/11/96), 685 So.2d 514.
| iaThe William Rowe heirs counter that dismissals with prejudice have been recognized by this court and others. Wilson v. Allums, 47,147 (La. App. 2 Cir. 6/8/12), 94 *1160 So.3d 908, writ denied, 2012-1611 (La. 10/26/12), 99 So.3d 650; Pontchartrain Materials Corp. v. Quick Recovery Coatings Servs., Inc., 2010-1476 (La. App. 4 Cir. 5/6/11), 68 So.3d 1113, writ denied, 2011-1104 (La. 9/16/11), 69 So.3d 1143. In spite of the presumption against dismissal with prejudice, they submit the trial court has “wide discretion” in this regard. Dillard v. Stamm, 400 So.2d 1112 (La. App. 1 Cir. 1981).
Suits dismissed for want of prosecution do not decide any issues in controversy, do not form the basis of res judica-ta, and are therefore presumptively to be dismissed without prejudice. City of New Orleans v. Westwego Canal & Terminal Co., 206 La. 450, 19 So.2d 201 (1944), cited in Johnson v. American Bell Fed’l Credit Union, 2014-2551 (La. 3/27/15), 164 So.3d 182; Entrada Co. v. Pressley, 50,261 (La. App. 2 Cir. 12/2/15), 183 So.3d 617. We are constrained to find that the instant judgment addressed none of the substantive issues and, presumptively, should have been without prejudice.
Moreover, in Entrada Co. v. Pressley, supra, this court distinguished Wilson v. Allums, supra, on grounds that the affected parties “did nothing regarding the judgment dismissing their cross-claim for abandonment.” Similarly, in Pontchartrain Materials Corp., supra, the affected party “took no action, either by filing a motion for new trial or seeking a writ to the appellate court, to obtain review of that judgment.” By contrast, after the district court issued the instant ex parte order of dismissal, BNY timely filed a motion to amend or set aside the judgment; after the court denied these, BNY filed yet another motion, to amend the latter judgment. As such, |13BNY’s conduct has not been such as would warrant dismissal with prejudice. The district court abused its discretion in refusing to amend the judgment to this effect.[6]
The judgment will be amended to recite that dismissal is without prejudice.
CONCLUSION
For the reasons expressed, the judgment is affirmed insofar as it dismissed Bank of New York Mellon’s claims against the William Rowe heirs. The judgment is amended, however, to recite that the dismissal is without prejudice. All costs are to be paid by Bank of New York Mellon.
JUDGMENT OF DISMISSAL AFFIRMED, BUT AMENDED TO BE WITHOUT PREJUDICE.

. At a hearing, counsel argued that the hquse was Iree’s separate property, but the documents in the record da not show whether it. was separate or community.

. The original petition did not name the estate of William Rowe as defendant.

. The motion to substitute counsel appears only on the clerk of court’s ledger report; there is no copy of it, or of any motion, filed on August 15,- 2012, in the appellate record.

. The document is labeled "Opinion,” but it concludes with the decretal language, "IT IS HEREBY ORDERED that Plaintiff's Motion for Amendment of Judgment and Motion to Set Aside Dismissal is DENIED,” thus making it an appealable final judgment.

. We also note that Greater New Orleans Homestead, supra, applied an earlier iteration of the law of abandonment, La. C.C. art. 3519 (1870), which was repealed by 1960 La. Acts No. 30 and replaced by La. C. C. P. art. 561. Unlike the former Art. 3519, Art. 561 makes no reference to "before obtaining final judgment,” but courts still recognize that abandonment does not occur after a case is reduced to final judgment. See, e.g., Rodgers v. Rodgers, supra; Joseph v. Wasserman, 2015-1193 (La. App. 4 Cir. 5/4/16), 194 So.3d 720 (collecting cases),

. This court takes no position on any potential exception of res judicata that any other defendants might file in response to a potential new or amended petition. Even though courts are now allowed to notice res judicata on their own motion, La. C. C. P. art. 927 B (as amended by 2008 La. Acts No. 824, § 1, eff. Jan. 1, 2009), we would decline to do so until the record is sufficient under La. R.S. 13:4231.